REINFORCED CONCRETE PIPE CO. *v.* BOYES.

1. PRINCIPAL AND AGENT—SCOPE OF AUTHORITY—POWERS.
   It is a well settled rule in this State that the apparent scope of the authority of an agent is to be determined by the acts of the principal and not by the acts of the agent; persons dealing with the agent are bound to inquire into the extent of the agent's authority, not from the agent, but, in the absence of written evidence, from the principal.

2. SAME—"HOLDING OUT" PERSON AS AGENT—ESTOPPEL.
   The act of the principal in introducing the agent as the representative who would look after their part of the work, which included, under the written contract between the parties, only the manufacture of concrete pipe, at the place of construction, did not amount to. holding out the representative as a general agent, so as to bind the principal for changes made in the work outside the terms of the contract and extras claimed to have been authorized by the representative.

3. CONTRACTS — INTERPRETATION — REASONABLE TIME — DIRECTED VERDICT.
   Under a contract for the manufacture of concrete pipe, of certain dimensions, not fixing a time of delivery or for completion of the work, the question of the time of performance depended on what was reasonable, and, the facts not being in dispute, the question became a question of law for the court.

4. SAME—REASONABLE TIME—QUESTIONS OF FACT AND LAW.
   Evidence that the pipe specified by the written contract was ready for delivery in about two months, that over 3,000 feet was manufactured, and that the work progressed continuously from the time when it was commenced, that substantially the only delay arose from the fact that some curved pipe was required, and that the contract between plaintiff and defendant did not specify curved pipe, *held*, to have warranted the court in directing a verdict for the plaintiff, in an action on the contract, and against the claim of the defendant contractor for recoupment for delay.
   180 MICH.—39.

Error to Kent; Brown, J. Submitted April 27, 1914. (Docket No. 144.) Decided June 1, 1914.

Assumpsit by the Reinforced Concrete Pipe Company against David W. Boyes and another for an amount due under a special contract. Judgment for plaintiff on a directed verdict. Defendants bring error. Affirmed.

*Charles A. Watt*, for appellants.

*Martin H. Carmody*, for appellee.

KUHN, J.. The plaintiff, a corporation with its business offices located at Jackson, Mich., is engaged in the manufacture, under a patented process, of sewer pipe known as reinforced concrete pipe. The defendant Boyes, who resides in Grand Rapids, Mich., is engaged principally as a contractor in street and sewer work in that city. In the summer of 1909 he was successful in obtaining the contracts for the construction of sewers on two of its streets. After bidding on these jobs, and before receiving the contracts, knowing of the business of the plaintiff, he called at its offices in Jackson to get prices on the amount of pipe needed. After some negotiation, and after the contracts were awarded defendant Boyes, the following contract was entered into between the parties:

"This article of agreement, made and entered into this 4th day of September, A. D. 1909, by and between the Reinforced Concrete Pipe Company, of Jackson, Michigan, party of the second part, witnesseth: That the said party of the first part, for the consideration hereinafter named, does hereby promise, covenant, and agree to manufacture for the said party of the second part, approximately:

"18x20 to be manufactured or not as directed by D. W. Boyes.

"732 lin. ft. 18 in. inside diam. reinforced concrete pipe, at 65c. per lin. ft.

"296 lin. ft. 21 in. inside diam. reinforced concrete pipe, at 75c. per lin. ft.

"852 lin. ft. 24 in. inside diam. reinforced concrete pipe, at 95c. per lin. ft.

"564 lin. ft. 27 in. inside diam. reinforced concrete pipe, at $1.10 per lin. ft.

"266 lin. ft. 30 in. inside diam. reinforced concrete pipe, at $1.35 per lin. ft.

"332 lin. ft. 33 in. inside diam. reinforced concrete pipe, at $1.50 per lin. ft.

"The said pipe is to be manufactured for said second party at the city of Grand Rapids, Michigan, along the line of sewer construction of said city, where free water may be obtained, at such places as are convenient and practicable for the manufacture thereof, and where permission may be had from the city of Grand Rapids for the manufacture of said pipe; said places of manufacture being the place of acceptance and delivery.

"Said party of the first part further agrees to manufacture the pipe in a good workmanlike manner, using a mixture of one part Portland cement and five parts sandy gravel, and reinforce the same, using the American Steel & Wire Company's wire reinforcement in the body of the pipe, with the interlocking joint, as per the specifications of the reinforced concrete pipe, copy of which is hereto attached.

"It is understood and agreed that in the manufacture of said pipe the said party of the first part shall provide such openings for house and catch basin connections as are shown by the plans of the city engineer, or the engineer in charge of said sewer construction, without extra charge, the number and sizes of such openings to be furnished by the party of the second part at the commencement of the manufacture of said pipe.

"It is further agreed and understood that the manufacture of the pipe shall be under the inspection of the city engineer or the engineer in charge of the work.

"The said party of the first part further agrees to furnish a suitable derrick and saddle for the handling and lowering of said pipe into the trench, without extra charge to the party of the second part, excepting, however, the freight to and from Jackson to

Grand Rapids, Michigan, shall be paid by the party of the second part.

"The said D. W. Boyes, party of the second part, does hereby promise and agree to and with the said party of the first part that he will accept of and receive the said pipe, when so manufactured, at the said places above mentioned, and pay to the party of the first part the prices per lineal foot as stipulated above.

"The said party of the second part further agrees to settle and pay to the said party of the first part, on the 10th day of each and every month during the time the said pipe is being so manufactured, for all pipe manufactured by said party of the first part during the previous month, that is to say, on the 10th day of each and every month after the commencement of the manufacture of the pipe, the said party of the second part shall pay to the said party of the first part for all pipe manufactured by the said party of the first part during the preceding month, and at the completion of the manufacture of said pipe the party of the second part agrees to settle in full and pay the balance due for all pipe manufactured by said party of the first part for this contract. Pipe to be paid for as estimated by the city engineer.

"In witness whereof, the said parties have set their hands and seals the day and date first above written.

"This contract is executed in duplicate.

"THE REINFORCED CONCRETE PIPE COMPANY,
                    "By E. F. LOWERY, Prest."
    "D. W. BOYES."

Attached to the contract was a copy of the standard specifications for the manufacture and composition of reinforced concrete pipe. Shortly after the execution of the contract plaintiff sent on to Grand Rapids the necessary moulds, tools, and machinery for manufacturing the pipe, which was begun on September 23d, under direction of a Mr. Curran, who was the foreman in charge of the gang of workmen on the job. After the work was completed, and when plaintiff insisted on payment according to the terms of the contract, the defendants claimed certain set-offs, amount-

ing to about $200, composed of various items—for constructing some brick sewer, for bailing, for extra cement around pipes under railroad tracks, and for city inspection charges—all of which were outside the terms of the contract. This claim resulted in the present controversy. On the trial of the case the defendants admitted the full amount claimed by the plaintiff in its bill of particulars, and claimed the benefit of Circuit Court Rule 24c, in respect to the opening and closing in the taking of the testimony and the argument on the trial of the cause. This right of a set-off was based by the defendants on two propositions, viz.:

(1) That Mr. Curran was held out to defendant Boyes as an agent having authority to charge the plaintiff for the minor changes which were made.

(2) That the pipe to be manufactured and supplied by the plaintiff under the contract was not furnished to the defendant Boyes within a reasonable time, as a result of which he suffered losses.

At the close of defendants' proofs, the trial judge directed a verdict for the plaintiff, and whether or not the two propositions above set forth, under the proofs in this case, raised questions of fact which should have been submitted to the jury is the question to be considered in reviewing the case here.

Instead of manufacturing its pipe at Jackson and shipping the same to its customers as ordered, the plaintiff company, after making its contract for a specific amount of pipe, sends its employees to the place where the pipe is used and manufactures it there. An examination of the contract shows that by its terms the only duty devolving upon the plaintiff was to manufacture the pipe of the sizes and dimensions called for in the contract in the manner and the place provided for in the contract. As to Curran's connection with the work, the defendant Boyes testified:

"Mr. Curran was the representative of the Jackson people, the Reinforced Concrete Company. He was introduced to me here in this city as a representative that would look after their part of the work here. He was superintendent or foreman of construction of the work here. He went to the gravel pit at different times, in with the inspector, and loaded the gravel. All I can say is that he ordered the gravel and went out different times to the gravel pit with the inspector. Other materials were purchased there—cement and slants for the pipe. He ordered them as he wanted them, always. He hired the men. Mr. Curran had supervision of the work as it went along. If any changes were made in the manner of doing work as it went along, Mr. Curran made them. * * * Mr. Curran ordered that change in the form or in the pipes. He superintended the work of the men there. Mr. Curran had general charge of all work that was done in the city of Grand Rapids on those two jobs, so far as I know. I dealt with Mr. Curran, that is, in regard to the work."

It is a well-settled rule in this State that the apparent scope of the authority of the agent is to be determined by the acts of the principal, and not by the acts of the agent. *Marx* v. *King*, 162 Mich. 258, 267 (127 N. W. 341), and cases cited; 31 Cyc. p. 1322. In *Delta Lumber Co.* v. *Williams*, 73 Mich. 86, 91 (40 N. W. 940)', this court said:

"Corporations are bound by the acts of their agents to the same extent, and under the same circumstances, as natural persons. Agents may have as much or as little power as their principals see fit to give them, and one dealing with an agent is bound to inquire into the extent of his authority, not from the agent, in the absence of a written evidence of authority, but from the principal, if accessible; and dealings or engagements of the agent beyond the scope of his authority do not bind the principal. *Bond* v. *Railroad Co.*, 62 Mich. 643 [29 N. W. 482, 4 Am. St. Rep. 885]."

It is urged that the statement in defendant Boyes' testimony, "He was introduced to me here in this city as a representative that would look after their part

of the work," was a holding out of Curran as a general agent. By the terms of the contract, plaintiff's part of the work was to manufacture the tile, and the statement could mean nothing more to defendant Boyes, who was the other party to the contract, than that Curran was in Grand Rapids for that purpose, to look after plaintiff's part of the work—to manufacture the tile. It further appears that the defendant Boyes at different times telephoned the offices of plaintiff at Jackson with reference to details of the work. In the absence of express authority from the plaintiff holding out Mr. Curran as its general agent, it was incumbent upon the defendant Boyes to make inquiry of the plaintiff, if he desired to bind plaintiff as to matters outside of the contract because of acts of Curran. It is claimed that the instant case should be governed by the decision of this court in *Teakle* v. *Moore,* 131 Mich. 427 (91 N. W. 636). We think it is clearly distinguishable from the present case, as in that case all the contracts for the different portions of the work on a building referred to the supervising architect as the agent of the owner, and it was held that this was a sufficient authorization to bind the owner to an arrangement made by the architect with a contractor for the erection of a scaffold. We agree with the trial judge that there was not sufficient evidence to warrant submitting to the jury the question of charging plaintiff on account of expenditures made by the defendant Boyes because of alleged consent by Curran, who was plaintiff's foreman on the job.

The contract does not specify the time in which the work was to be done. Defendant Boyes' contracts with the city required the completion of the work by December 10, 1909. It appears that the plaintiff had manufactured and placed on the ground ready for use all pipe ordered by the defendant Boyes within the time provided in his contracts with the city for the completion of the work, although these contracts with

the city were not made a part of the contract between the plaintiff and said defendant. It is claimed that the work was delayed because the plaintiff manufactured a size of pipe at first which the said defendant could not use to advantage. Nothing is contained in the contract as to which size of pipe should be furnished first. It is admitted that ten days after signing the contract the work actually began, and that, with the exception of time consumed putting in a curved brick sewer and one or two days when it was held up by the city inspector because of green pipe, there was no delay. The contract did not provide for curved pipe, and the fault of this delay must be ascribed to the said defendant in failing to provide for it. It is an elementary proposition of law that, where no time is specified in the contract for the completion of work, it must be done within a reasonable time. What is reasonable time* usually depends upon the nature of the contract and the particular circumstances. Where facts are in dispute, it presents a question of fact for the jury. *Stange* v. *Wilson*, 17 Mich. 342; *Coon* v. *Spaulding*, 47 Mich. 162 (10 N. W. 183); *Hill* v. *Mathews*, 78 Mich. 377 (44 N. W. 286); *Greenwood* v. *Davis*, 106 Mich. 230 (64 N. W. 26).

When the question of reasonable time depends, however, upon the construction of a contract in writing or upon undisputed facts outside of the contract, it becomes a matter of law. 9 Cyc. p. 614. In the instant case the contract is in writing, and the only testimony offered was that of the defendant Boyes. There is no evidence showing the usage or amount of time reasonably required to manufacture the number of feet of pipe of the sizes and kind mentioned in the contract. The amount of pipe, 3,042 feet, was completed and ready for the defendant Boyes in a little over two months. We are of the opinion that there was no question of fact to submit to the jury, and that the court properly determined the question of reason-

able time under the circumstances of this case to be a question of law, and rightfully determined it in favor of the plaintiff.

Judgment affirmed.

MCALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.