INTERNATIO–ROTTERDAM, Inc. v. HERRICK CO.

Civ. A. No. 2732.

United States District Court
D. Connecticut.

Oct. 19, 1951.

Bruce W. Manternach (of Robinson, Robinson & Cole), Hartford, Conn., for plaintiff.

Irving S. Ribicoff (of Ribicoff, Ribicoff & Kotkin), Hartford, Conn., for defendant.

SMITH, District Judge.

This is an action by the purchaser of a quantity of aluminum sheets to recover for fire damage to the sheets while they remained in the possession of the seller.

The action is brought in two counts, seeking recovery in tort for negligence of the seller in storing the sheets, and in contract for breach of the seller's agreement to store the sheets "in warehouse".

The sheets, which were packed in skids of wood covered by inflammable, waterproof paper, were stored outside the building of the seller some twenty feet across a gravel driveway from a place where employees of the seller were accustomed to burn rubbish several times a week. The fire damage to the pile of skids occurred while a rubbish fire was burning, untended, at the usual place. There is no direct evidence as to the manner in which the pile of skids became ignited.

The skids were retained in the possession of the seller under the provisions of the contract of sale and a so-called warehouse receipt. While the seller was not a warehouseman, engaged in the business of storing goods for hire, it was, in this instance, storing goods under a contract for the mutual benefit of itself and the buyer, and may, therefore, be held to a degree of care appropriate for one warehousing goods for hire. Since the goods were damaged while in the defendant's possession, the burden was upon the defendant to establish the manner of the damage in or-

der to rebut the prima facie case of negligence made by plaintiff establishing the fact of damage. Murray v. Paramount Petroleum & Products Company, 1924, 101 Conn. 238, 125 A. 617; Dejon v. Smedley Company, 1928, 108 Conn. 659, 667, 144 A. 473; O'Dea v. Amodeo, 1934, 118 Conn. 58, 63, 170 A. 486; Malone v. Santora, 1949, 135 Conn. 286, 291, 64 A.2d 51.

■ Defendant has failed to establish the manner in which the fire was communicated to the skids, depending upon an inference from the presence of large numbers of children in the neighborhood with access to the place of storage that some of them must have carried embers of the untended fire to the skids. There is no direct evidence of any such occurrence, however, and it appears that at least as strong an inference could be drawn that sparks were blown across the intervening twenty feet by the wind which might be expected in March.

■ While the contract provided for storage at buyer's risk, such a provision should not permit the seller bailee to avoid responsibility for its own negligence, Malone v. Santora, 1949, 135 Conn. 286, 293, 64 A.2d 51, and cases cited.

■ Nor is the provision of the contract that the buyer should provide insurance made sufficiently definite, so that it may be construed to cover loss through the bailee's negligence. It may well be that the policy which the Connecticut courts have held to prevent a bailee for hire from contracting against liability for his own negligence, would not be held to prevent bailee and bailor from spreading the risk of damage from the bailee's negligence by providing for insurance against that hazard. It is not clear from this contract, however, that the bailee's negligence was a hazard which the parties contracted to insure against and since the public policy of Connecticut appears to favor holding a bailee for hire to responsibility for his own negligence, this contract will not be construed to provide for insurance against it in the absence of clearer and less ambiguous language.

■ ■ So far as the contract count is concerned, the ordinary and popular meaning of the words "in warehouse" should be applied in the absence of any showing that the words were intended by the parties to carry another meaning because of some custom or usage in the trade. Trumbull Electric Manufacturing Company v. John Cooke Company, 1943, 130 Conn. 12, 31 A.2d 393; Perkins v. Eagle Lock Company, 1934, 118 Conn. 658, 174 A. 77.

No such special meaning is established by the evidence. It is true that for some purposes goods may be considered in warehouse even though held in open storage but it seems probable that it would be made plain between the bailor and bailee that the usual meaning of placement in some sort of building or enclosure was not intended by the addition of some such explanatory phrase as "outside storage". Storage outside, then, was a breach of the contract of bailment and the provision of the contract that the goods should be stored at buyer's risk may well be held not to apply to storage in violation of the terms of the contract.

■ On both counts, therefore, the plaintiff is entitled to recover, although since the same damage was caused by the breach of contract and the breach of the duty to use care, the recovery is single. The plaintiff may, therefore, recover the total amount of the damage, $4,375.81, unless the receipt of that sum from the insurance company bars plaintiff from recovery in this action on the ground that plaintiff is no longer the real party in interest. The real-party-in-interest defense is not, however, directly raised by the pleadings. There was some discussion of the matter on pretrial and each party was, at that time, ordered to furnish the opposite party a copy of its insurance policy. It was indicated that the payment by the insurance company to the plaintiff was, in form at least, a loan under the policy. The only evidence received at the trial on the subject was the statement that plaintiff had been paid the amount of loss. Neither the policy nor the form of the draft are in evidence.

Since the issue was not raised by the pleadings nor full proof taken on the nature of the contract between plaintiff and its insurer, or on the nature of the payment made by the insurer to the plaintiff, the Court cannot uphold the defense of lack of real party in interest at this time.

Judgment may be entered for the plaintiff to recover of the defendant the sum of $4,375.81 and its costs.

### Findings of Fact

1. The plaintiff is a corporation organized under the laws of the State of New York and having its principal place of business in the City of New York in said state.

2. The defendant Herrick Company is a corporation organized under the laws of the Commonwealth of Massachusetts and having a place of business in the City of Hartford, Connecticut.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

4. On or about December 1, 1948, the defendant sold to the plaintiff twenty-one skids of corrugated aluminum roofing sheets.

5. The contract of sale was made out by the plaintiff and accepted in writing on December 1, 1948 by the defendant.

6. The contract of sale provided that the sheets were "to be held without charge by Seller in warehouse for Buyer's account and risk".

7. The contract further provided "while material is in Seller's premises, insurance coverage will be provided by Buyer, effective on date of title transfer."

8. The sheets were packed in skids containing some 2,000 to 4,000 pounds each, enclosed in wooden boards on the sides and ends, wrapped in waterproof tarpaper, forming packages some 2½ feet wide and in lengths of 6, 8, 10 and 12 feet.

9. The sheets had been purchased by the defendant about January, 1948, and shipped to the defendant in open gondola cars from the vicinity of Seattle, Washington, to the defendant's premises on Newfield Street in Hartford, Connecticut.

10. When received by the defendant, the sheets were placed adjacent to, but outside of, its warehouse building beneath the warehouse office windows and between two receiving doors of the warehouse, approximately 150 feet from the street.

11. A gravel driveway lay alongside the skids on the side away from the warehouse and led around the warehouse to the railroad tracks in the rear of the warehouse. A housing project, in which numerous children resided, lay across the street.

12. The premises outside the warehouse were not fenced in, or otherwise protected from entry.

13. After the purchase of the twenty-one skids of sheets by the plaintiff on December 1, 1948, tags were placed by the defendant upon the skids so purchased to indicate the plaintiff's ownership.

14. The defendant allowed the skids to remain in the same place in the open air they had theretofore been stored.

15. It was the custom of the defendant's employees to burn rubbish once or twice a week at a point approximately twenty feet from the nearest portion of the stored skids, across the gravel driveway from the skids.

16. On March 31, 1949, while a pile of rubbish was burning at that point, the covers on some of the skids became ignited.

17. By the fire, a portion of the skids owned by the plaintiff was damaged, in the total amount of $4,375.81.

18. Plaintiff had insured the skids of sheets against damage by fire and has been advanced by its insurer the full amount of said damage.

19. The fire damage to the skids of sheets was caused by sparks from the rubbish fire which had been left unattended and was discovered only by the general sales manager of the defendant who noticed the smoke from the pile of skids near his office window.

20. Defendant failed to exercise the care of a reasonably prudent jobber of aluminum roofing sheets in permitting them to remain in inflammable covering in a position approximately twenty feet from an untended rubbish fire.

21. Outdoor storage of the sheets packaged in skids, as they were, close to the warehouse building, afforded reasonable protection against weather and other hazards, except for the rubbish fires.

### Conclusions of Law

1. The court has jurisdiction of the parties and subject matter of the action.

2. The defendant, as a bailee for hire, had a duty to use reasonable care in the storing of the skids.

3. The plaintiff has established a prima facie case of negligence on the part of the defendant by showing the good condition of the skids at the time of the bailment and damage to them while in the bailee's possession.

4. The defendant had the burden of proof to rebut the prima facie case made by the plaintiff by showing the true cause of the damage to the skids.

5. Defendant has failed to meet this burden of proof.

6. The defendant, therefore, is liable for damages to the plaintiff for the damage caused by its negligence.

7. The contract between the parties provided for storage "in warehouse".

8. The phrase "in warehouse" is to be given its ordinary and popular meaning unless it can be shown that a different meaning was intended by the parties.

9. Defendant has failed to show that the parties intended anything but the ordinary and popular meaning for the phrase "in warehouse".

10. Outside storage was, therefore, a breach of contract by the defendant.

11. This breach of contract was a substantial factor in causing the damage to the skids.

12. The defendant is responsible, therefore, for damage to the skids which was caused by its breach of contract.

13. Under the principles of Connecticut law, a bailee for hire may not exculpate himself from liability for damages which arise from his own negligence.

14. The provision in the contract which stated that the goods were to be at the buyer's risk did not relieve the defendant for the damages caused by his negligence and his breach of contract.

15. The provision in the contract which required insurance to be provided by the buyer cannot be interpreted to mean that loss through the seller's negligence would be provided against.

16. Plaintiff is entitled to recover of the defendant the sum of $4,375.81 and its costs.